UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH WILSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>F. ORR, et al.,<br><br>　　　　　Defendants. | No.  2:20-cv-1715 TLN AC P<br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court is defendants' motion for summary judgment.  ECF No. 44.

I.　　Procedural History

On screening, the court found that plaintiff stated claims for relief against defendants Orr, Brones, Brazil, and Bustamante and ordered service of the complaint.  ECF No. 8.  After the close of discovery, defendants filed a motion for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies (ECF No. 44), which plaintiff opposes (ECF No. 50). Defendants also sought and were granted leave to file a merit-based motion for summary judgment in the event the currently pending motion is denied.  ECF Nos. 46, 49.[1]

---

[1] There is no such alternative motion currently before the court.

1

II. Plaintiff's Allegations

The complaint alleges that defendants Orr, Brones, Brazil, and Bustamante violated plaintiff's rights under the Eighth Amendment. ECF No. 1. Specifically, plaintiff alleges that on January 23, 2020, he arrived at the A-Facility clinic for a medical ducat and Orr refused to let him wait inside in the holding tank despite the cold. Id. at 4. Approximately ten minutes afterwards, Brones came out of the clinic and gave plaintiff permission to enter the clinic, which he did. Id. When Orr saw plaintiff, he yelled at plaintiff to get out—even though Brones told Orr that he had given plaintiff permission to enter and there was plenty of room—and began to cuff plaintiff behind his back. Id. at 4-5. Plaintiff informed Orr that he had a medical chrono for double handcuffs, and when Brones refused to help Orr cuff plaintiff's hands behind his back, Orr got angry and yanked plaintiff's wrists together, causing a torn ligament in his right shoulder. Id. at 5-6. Orr later escorted plaintiff to the program office cage, where defendants Bustamante and Brazil were present. Id. at 7. After putting plaintiff in the cage, Orr directed plaintiff to put his arms through the tray slot, and when plaintiff complied, he began to yank up and down on plaintiff's arms in a forceful manner and yelling "Let go of my handcuffs," although plaintiff was not resisting. Id. Bustamante and Brazil did not intervene, and after the incident Bustamante refused plaintiff's request for medical attention. Id. at 7-8.

III. Motion for Summary Judgment

A. Defendants' Arguments

Defendants argue that they are entitled to summary judgment because plaintiff failed to file any grievance against Brones, Brazil, and Bustamante. ECF No. 44-1 at 5-6. With respect to Orr, defendants argue that while plaintiff exhausted his administrative remedies, this did not occur until after he filed the complaint. Id. at 6-7. They assert that due to the state of emergency that existed at the time, the normal time limit for a response at the third level of appeal did not apply, and the lack of response within that time limits therefore did not constitute an exhaustion of the appeal. Id.

B. Plaintiff's Response

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil

2

1   Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely
2   disputed must support the assertion by . . . citing to particular parts of materials in the record."
3   Plaintiff has also failed to file a separate document in response to defendants' statement of
4   undisputed facts that identifies which facts are admitted and which are disputed, as required by
5   Local Rule 260(b).

6     "Pro se litigants must follow the same rules of procedure that govern other litigants."
7   King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,
8   Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-
9   established that district courts are to "construe liberally motion papers and pleadings filed by *pro*
10  *se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611
11  F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel
12  "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes
13  upon a litigant," such as "limited access to legal materials" as well as "sources of proof."
14  Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and
15  internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of
16  "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation
17  omitted).

18    Accordingly, the court considers the record before it in its entirety despite plaintiff's
19  failure to be in strict compliance with the applicable rules.  However, only those assertions in the
20  opposition which have evidentiary support in the record will be considered.

21    In his response, plaintiff concedes that he did not identify Bustamante and Brazil or any
22  actions pertaining to them in his grievance against Orr, and he does not claim to have pursued his
23  claims against them in a separate grievance.  ECF No. 50 at 1.  With respect to Orr and Brones,
24  he argues that his grievance against Orr also named Brones and that his appeal was exhausted
25  when he did not receive a response within the time provided by the regulations as extended by the
26  state of emergency, which expired prior to the filing of the complaint.  Id. at 2.

27    C. Defendants' Reply
28    In their reply, defendants argue that merely mentioning Brones in the appeal was not

3

1  sufficient to put the facility on notice of any claims against him and therefore did not exhaust
2  administrative remedies as to those claims.  ECF No. 51 at 3-4.  They also argue, for the first
3  time, that the third-level response to plaintiff's grievance was exempt from the regular deadlines
4  because it was a complex matter and involved other agencies and jurisdictions, and that the third-
5  level reviewer was not obligated to provide plaintiff with notice that the deadline did not apply.
6  Id. at 2-3.

       D.      Request for Judicial Notice

Defendants' motion includes a request that the court take judicial notice of Governor Newsom's March 4, 2020 Executive Order declaring a state of emergency in California due to COVID-19.  ECF No. 44-2.  "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known . . . or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Accordingly, the request for judicial notice will be granted.

      IV.     Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

4

1  Indeed, summary judgment should be entered, "after adequate time for discovery and upon
2  motion, against a party who fails to make a showing sufficient to establish the existence of an
3  element essential to that party's case, and on which that party will bear the burden of proof at
4  trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element
5  of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such
6  a circumstance, summary judgment should "be granted so long as whatever is before the district
7  court demonstrates that the standard for the entry of summary judgment, as set forth in Rule
8  56(c), is satisfied." Id.

9  If the moving party meets its initial responsibility, the burden then shifts to the opposing
10 party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.
11 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the
12 existence of this factual dispute, the opposing party may not rely upon the allegations or denials
13 of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
14 admissible discovery material, in support of its contention that the dispute exists. See Fed. R.
15 Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a
16 fact "that might affect the outcome of the suit under the governing law," and that the dispute is
17 genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving
18 party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

19 In the endeavor to establish the existence of a factual dispute, the opposing party need not
20 establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
21 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
22 trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)
23 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the
24 "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see
25 whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal
26 quotation marks omitted).

27 "In evaluating the evidence to determine whether there is a genuine issue of fact, [the
28 court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

5

v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendants simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment.  ECF No. 44-3; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V.   Legal Standards

   A.   Legal Standard for Exhaustion

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences").  "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  Ross v. Blake, 578 U.S. 632, 638 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones v. Bock, 549 U.S. 199, 204, 216 (2007).  "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."

6

Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand." Albino, 747 F.3d at 1171 (citation and internal quotations marks omitted). "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross, 578 U.S. at 639. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. (citation omitted).

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion'" (quoting Jones, 549 U.S. at 218)).

As long as some potential remedy remained available through the administrative appeals process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through

7

machination, misrepresentation, or intimidation." Id. at 644.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by Albino, 747 F.3d at 1168.

### B. California Regulations Governing Exhaustion of Administrative Remedies

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. This review process is set forth in the California Code of Regulations. At the time relevant to this complaint, those regulations allowed prisoners to "appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2019).[2]

At the time plaintiff was proceeding through the appeals process, it was comprised of three levels of review for most types. Id. § 3084.7. In most cases, an appeal was exhausted by obtaining a decision at the third level. Id. § 3084.1(b). The appeal was required to "list all staff member(s) involved and shall describe their involvement in the issue." Id. § 3084.2(a)(3). If the inmate did not have identifying information, they were to "provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Id.

Responses at the third level were to "be completed within 60 working days from the date of receipt by the third level Appeals Chief," except for emergency appeals and appeals of involuntary psychiatric transfers, which were exempt and had their own response timeframes. Id. § 3084.8(c)(3).

> Exception to the time limits provided in subsection 3084.8(c) [was] authorized only in the event of:

---

[2] Due to amendments which revised the grievance process and went into effect on June 1, 2020, after plaintiff initiated the appeals process, all citations to Title 15 of the California Code of Regulations are to the 2019 version, which was the version in effect at the time plaintiff began pursuing his administrative remedies. See ECF No. 44-6 at 2-3 (explaining that the version of the regulations a grievance was subject to depended upon when the grievance was initiated).

8

> (1) Unavailability of the inmate or parolee, or staff, or witnesses.
>
> (2) The complexity of the decision, action, or policy requiring additional research.
>
> (3) Necessary involvement of other agencies or jurisdictions.
>
> (4) State of emergency pursuant to subsection 3383(c) requiring the postponement of nonessential administrative decisions and actions, including normal time requirements for such decisions and actions.

Id. § 3084.8(d). "Except for the third level, if an exceptional delay prevent[ed] completion of the review within specified time limits, the appellant, within the time limits provided in subsection 3084.8(c), [was to] be provided an explanation of the reasons for the delay and the estimated completion date." Id. § 3084.8(e).

VI. Undisputed Material Facts

Plaintiff did not separately respond to Defendants' Statement of Undisputed Facts (DSUF), and facts are deemed undisputed except as otherwise discussed. Additional facts have been taken from the records of plaintiff's appeals, the authenticity of which are not in dispute.

Plaintiff is a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR) and at all relevant times was housed at Mule Creek State Prison (MCSP). DSUF (ECF No. 44-4) ¶¶ 1-2.

Between January 23, 2020, and August 27, 2020, plaintiff submitted only one grievance that was exhausted at the third level of review: Appeal No. MCSP-A-20-00522 (OOA Appeal No. 2003517). DSUF ¶ 8. This appeal is the only appeal that plaintiff claims exhausted his administrative remedies for his claims in this case. DSUF ¶ 9. The appeal did not identify defendants Bustamante and Brazil or their conduct alleged in the complaint. DSUF ¶¶ 10-11; ECF No. 50 at 1 (plaintiff's response).

On January 23, 2020, plaintiff submitted his first level grievance against in Appeal No. MCSP-A-20-00522. The appeal stated as follows:

> On 1/23/20 at @ 0945 hrs I went to the A-Facility clinic for a ducat. When I showed up I was standing behind two black inmates. C/O ORR took the other two inmates ducats and told them to have a seat in the holding tank. C/O ORR next took my ducat and as I proceeded to enter the clinic he stopped me. I asked why couldn't I too wait in

9

> the holding tank and C/O ORR stated, "Because I don't have to let you in, now get outside." Even after explaining to C/O ORR that I get infections easily and that inclement weather (it was very cold outside) causes pain in my bones and joints and puts me at risk of catching colds. While waiting outside C/O Barones came to the clinic door where I showed him my ducat and was allowed in to wait in the holding cell for my appointment. As I stepped to the door of the clinic, C/O ORR walked up and said, "What do you think you're doing?" I told C/O ORR that I was going into the holding cell (which was empty now) to wait for my appointment. C/O ORR told me that I was "getting my ass out of there" and I told him that I would like to speak to his supervisor. He then told me to turn around and cuff-up. As I turned around, C/O ORR grabbed my arm roughly and I told him that I have a handcuff chrono. This made him get even more aggressive and shove me into the wall to apply the handcuffs. He then took me to the A-Fac, Program Office and placed me in the holding cage. As C/O Orr was removing the cuffs he yanked my right arm through the slot while viciously pulling and twisting and yelling "let go of my cuffs". Throughout this incident I never resisted or gave justification for the unnecessary application of force. C/O Orr's actions were disrespectful, unprofessional racially motivated and an unnecessary use of force in violation of CCR Title XV § 3004(a-c) and my right to Protection from Cruel and Unusual Punishment under the Eighth Amendment to the United States Constitution.

ECF No. 44-6 at 13, 15 (minor spelling and grammatical errors corrected). On March 4, 2020, while plaintiff was awaiting the response, a state of emergency was declared due to the COVID-19 pandemic. DSUF ¶ 16. The first level of review was bypassed, and the appeal was granted in part at the second level on March 20, 2020. Id. at 13-14, 17-18. The response notes that Bustamante, Brazil, and Brones were interviewed as part of the appeal inquiry. Id. at 17.

On March 30, 2020, plaintiff's third-level appeal was received by the Office of Appeals. ECF No. 44-6 at 13, 15. The appeal stated:

> Dissatisfied: The second level reviewer has failed to adequately address my complaint inasmuch as he is avoiding the issue of the excessive amount of force asserted by C/O ORR in this incident. Necessary documents such as the CDCR 7219 and the RN's examination related to this incident have been conveniently misplaced and their weight hasn't been given due consideration in the SLR's response. The partial granting of this appeal offers me no protection from future overly aggressive behavior or attacks from officer ORR, therefore my action requested remains as set forth in Section "B" of this appeal and my administrative remedy be declared exhausted.

ECF No. 44-6 at 14, 16. On April 21, 2020, in response to the state of emergency, the Director of the Division of Adult Institutions issued a memorandum that extended deadlines by thirty

calendar days for the processes listed in title 15, section 3383(d) of the California Code of Regulations.[3]  ECF No. 44-6 at 32.  Plaintiff filed his operative complaint on August 27, 2020.  ECF No. 1.  On December 22, 2020, a decision was issued at the third level denying plaintiff's appeal.  Id. at 11-12.

VII.   Discussion

It is undisputed that the CDCR's administrative remedy process generally requires inmates to proceed through three levels of review to exhaust an appeal and that plaintiff did not exhaust his administrative remedies as to Bustamante and Brazil.  Instead, the parties dispute whether plaintiff exhausted grievance MCSP-A-20-00522 before he filed the complaint and whether the grievance was sufficient to exhaust his claim against Brones.

A.   Defendant Brones

As an initial matter, the parties contest whether Appeal No. MCSP-A-20-00522 was sufficient to exhaust plaintiff's administrative remedies as to defendant Brones.  Plaintiff argues that the appeal identified Brones by name and shows that he was present when plaintiff advised Orr that he had a cuff chrono and could not be handcuffed with a single cuff.  ECF No. 50 at 2.  Defendants acknowledge that the appeal names Brones but argue that it could not reasonably be construed as complaining about anyone other than Orr.  ECF No. 51 at 3.

Review of Appeal No. MCSP-A-20-00522 shows that plaintiff's only allegation regarding Brones was that he "came to the clinic door where I showed him my ducat and was allowed to wait in the holding cell for my appointment."  ECF No. 44-6 at 15.  "A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress," Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010), and merely mentioning that Brones allowed plaintiff inside is not sufficient to put the CDCR on notice that Brones failed to intervene in Orr's use of force.  There is no indication that Brones remained in the room with

---

[3] Section 3383(d) provided that during a state of emergency "nonessential administrative decisions, actions, and the normal time requirements for such decisions and actions," which explicitly included "the review and action on appeals," could be postponed.

11

plaintiff after letting him in[4] or that Brones was present when Orr used force against plaintiff. That Brones was interviewed as a part of the appeal inquiry does not demonstrate that the appeal was sufficient to provide notice of a claim against him for failing to prevent or intervene in Orr's use of force. Appeal No. MCSP-A-20-00522 therefore did not exhaust plaintiff's claim against defendant Brones.

        B.        Defendant Orr

With respect to Orr, defendants argue that plaintiff initiated this action prematurely because a decision was not rendered on his third-level appeal until December 22, 2020. ECF No. 44-1 at 6-7. They argue that under § 3084.8(d), the third-level response was exempt from the sixty-working-day time limit imposed by § 3084.8(c) because of the COVID-19 state of emergency. Id. However, neither the applicable regulations nor the evidence submitted by defendants support this claim. Section 3084.8(d) states, "[e]xception to the time limits provided in subsection 3084.8(c) is authorized *only* in the event of" the enumerated circumstances. (emphasis added). This indicates that exceptions to the deadlines can be made only in the circumstances identified, not that they occur automatically, and there is no indication that an exception to the time limits means no time limit. The fact that a memorandum was issued authorizing a thirty-day extension for all deadlines based on the state of emergency further indicates that the exception in the regulation does not apply automatically and that the regulation does not provide an indefinite extension of the deadline or complete exemption from a deadline.

In this case, plaintiff's third-level appeal was received by the Office of Appeals on March 30, 2020. ECF No. 44-6 at 13, 15. Under § 3084.8(c)(3), a response was to be completed within sixty working days. Excluding weekends and holidays, sixty days from March 30, 2020, was June 24, 2020. Taking into account the thirty-calendar-day extension provided by the April 21, 2020 memorandum, a response was to be completed by July 24, 2020, and plaintiff waited over a month, until August 27, 2020, to file his complaint.

---

[4] In fact it is unclear from the statements in the appeal whether Brones let plaintiff into the clinic from inside or let him in while passing by.

12

While the Ninth Circuit has not yet decided "whether to adopt a bright-line rule that *any* delay in a prison's response to an inmate's grievance is sufficient to render administrative remedies unavailable," it has found that in certain circumstances a delayed response renders the process unavailable. Fordley v. Lizarraga, 18 F.4th 344, 358 (9th Cir. 2021) (holding that prison's failure to respond to an emergency grievance for several months in contravention of its own deadlines rendered administrative remedies unavailable); see also Brown, 422 F.3d at 943 n.18 ("Delay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available." (citations omitted)). In so holding, it also acknowledged that "[e]very circuit to have considered the issue has agreed that a prison's failure to respond renders an administrative remedy unavailable." Id. at 355 & n.8 (citing cases from the Second, Third, Fourth, Sixth, Seventh, Eighth, and Tenth Circuits).

The undersigned agrees that the prison's failure to timely respond to plaintiff's third-level appeal rendered the administrative process unavailable. "[A]fter the inmate has waited a reasonable period of time and has received no response or notice of delay, the failure by prison officials to abide by inmate-grievance regulations must excuse the inmate's failure to exhaust; otherwise, prison officials could indefinitely delay inmates from pursuing legal remedies simply by ignoring all inmate appeals." Rupe v. Beard, No. 08-cv-2454 EFS, 2013 WL 2458398, at *16, 21, 2013 U.S. Dist. LEXIS 80041, at *47, 62 (E.D. Cal. June 6, 2013) (finding administrative remedies exhausted after prisoner waited twenty days after response was due to file complaint and response was received one week later). Holding otherwise "would thwart the orderly process Congress envisioned when it required compliance with an agency's internal administrative rules, because inmates—and courts—must know when remedies are exhausted." Fordley, 18 F.4th at 358 (citations omitted). In this case, plaintiff waited over a month after the already extended deadline before filing the complaint in the instant action. There is no evidence that plaintiff was provided notice of further authorized or anticipated delay, and the period of time he waited before bringing this action was reasonable. The undersigned is unpersuaded by defendants' implication that plaintiff was required to first inquire as to the status of his appeal before proceeding. ECF No .44-1 at 7 (stating that plaintiff did not inquire into the status of his appeal). They have

pointed to no such requirement in the appeals policy, and plaintiff is not obligated to ensure that the prison complies with its own policies.

The court notes that, in their reply, defendants argue for the first time that the sixty-day response time limit established in § 3084.8(c)(3) did not apply to plaintiff's appeal because the complexity of plaintiff's grievance entitled the Office of Appeals to an exemption to the time limit under § 3084.8(d). ECF No. 51 at 2. They also argue, again for the first time, that § 3084.8(e) exempted the Office of Appeals from having to inform plaintiff that the regular time constraints were not applicable. Id. In support of this new argument they rely on a new declaration from Howard Moseley, the Associate Director of the Office of Appeals. ECF No. 51-1. However, arguments and evidence presented for the first time in a reply are generally waived, see Graves v. Arpaio, 623 F.3d 1043, 1048 (9th Cir. 2010) (per curiam) ("arguments raised for the first time in a reply brief are waived"), and should not be considered unless the non-moving party has been given an opportunity to respond, Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996). There is no reason these arguments and evidence could not have been presented in defendants' moving papers, and they are therefore waived.

Furthermore, this newly alleged exemption from the time limit is equally unsupported by the regulations. As addressed above, § 3084.8(d) does not state that exceptions to the established time limits occur automatically or that an exception to the time limits means no time limit. With respect to defendants' argument that § 3084.8(e) exempted the Office of Appeals from having to notify plaintiff of any delay, such may be the case, but while the regulation may provide an exemption from providing notice, it does not provide an explicit exemption to complying with the sixty-day time limit. See Washington v. Cal. Dep't of Corr. & Rehab., No. 19-cv-169 VAP KK, 2020 WL 3057402, at *6, 2020 U.S. Dist. LEXIS 101010, at *13-14 (C.D. Cal., June 8, 2020) (finding administrative remedies were "effectively unavailable" because Office of Appeals failed to respond to or reject the third-level appeal within sixty-day time limit set forth in § 3084.8(c)), adopted in full, 2020 WL 3057401, 2020 U.S. Dist. LEXIS 101018 (C.D. Cal., June 9, 2020). Moreover, should the Office of Appeals choose not to provide a prisoner with notice of a delay in responding to a pending appeal, it runs the risk of rendering the administrative remedies process

unavailable. Holding otherwise would allow prison officials to abuse the process and "indefinitely delay inmates from pursuing legal remedies simply by ignoring all inmate appeals." Rupe, 2013 WL 2458398, at *16, 2013 U.S. Dist. LEXIS 8004121, at *47.

For the reasons explained above, the Office of Appeals' failure to respond within the applicable time limit or notify plaintiff of further delay at the third level of review rendered administrative remedies unavailable as to plaintiff's claims against defendant Orr.

VIII. Conclusion

Defendants' motion for summary judgment should be granted as to defendant Brones, Brazil, and Bustamante and denied as to defendant Orr.

IX. Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that the motion for summary judgment be granted as to defendants Brazil, Bustamante, and Brones because you admit that you did not exhaust your administrative remedies as to Brazil and Bustamante and the appeal you filed against Orr was not sufficient to put the prison on notice of you claim against Brones. It is being recommended that defendants' motions for summary judgment be denied as to defendant Orr because the Office of Appeals' failure to send you a timely response at the third level made the appeals process unavailable.

Accordingly, IT IS HEREBY ORDERED that defendants' request for judicial notice (ECF No. 44-2) is GRANTED.

IT IS FURTHER RECOMMENDED that:

1. Defendants motion for summary judgment (ECF No. 44) be GRANTED in part and DENIED in part as follows:

   a. GRANTED as to the claims against defendants Brazil, Bustamante, and Brones. The claims against these defendants should be dismissed without prejudice for failure to exhaust administrative remedies; and

   b. DENIED as to the claims against defendant Orr.

2. This action should proceed on the excessive force claim against defendant Orr only; and

3.  Any defendant who is not granted summary judgment by a final ruling on the instant exhaustion-based motion may file a merits-based motion for summary judgment within sixty days of the district judge's ruling.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 30, 2023

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE